**Mrs. Grace CARRIGAN, Appellant,**

**v.**

**SUNLAND–TUJUNGA TELEPHONE COMPANY and State of California, Public Utilities Commission, Appellees.**

**No. 16190.**

United States Court of Appeals
Ninth Circuit.

Jan. 28, 1959.

Certiorari Denied April 20, 1959.
See 79 S.Ct. 893.

STANLEY N. BARNES, Circuit Judge.

Mrs. Grace Carrigan appeals from the dismissal of her complaint against each appellee upon the ground that such complaint fails to state a claim upon which relief can be granted; and because the district court refused to convene a three-judge court to hear the matter. The only questions before us are (1) did appellant's complaint state a claim upon which relief can be granted, and (2) can a district court refuse to convene a three-judge court under the circumstances existing in this case?

It would serve no useful purpose for us to emphasize the difficulties under which laymen, unfamiliar with the practice of law, labor when they appear in propria persona. They have the undoubted and invaluable right as citizens to represent themselves in our courts. Almost as certainly, they endanger their ability to secure the fruits of that right by insisting that they can understand and apply legal theories (some technical and others not) with the same ability as that possessed by one who has spent years in his or her professional education.[1] That they cannot is repeatedly proved. But we would be the last to prevent the exercise of their great American right to represent themselves in court.

Appellant alleges in her complaint that Sunland-Tujunga Telephone Company (hereinafter called the Company) charged unlawful rates for its telephone services, in that such rates—under the three rate schedules promulgated by the Public Utilities Commission of the State of California (hereinafter called the Commission)—do not comply with sections 4251, 4252 and 4254 of the Internal Revenue Code of 1954, chapter 33, subchapter B (26 U.S.C. §§ 4251–4252, 4254)—"a tax law" enacted by Congress.[2]

Mrs. Grace Carrigan, Sunland, Cal., appellant, in pro. per.

Christopher M. Jenks, Warren A. Palmer, James K. Haynes, Orrick, Dahlquist, Harrington & Sutcliffe, Everett C. McKeage, Mary Moran Pajalich, San Francisco, Cal., for appellees.

Before BARNES, HAMLIN and JERTBERG, Circuit Judges.

1. Opinion of this Court in Carrigan v. California State Legislature, 9 Cir., 263 F. 2d 560.

2. These sections read as follows, insofar as they are quoted in appellant's complaint:
"The Internal Revenue Code of 1954:

The Internal Revenue Code taxes local telephone service ten per cent (10%) and long distance telephone service ten per cent (10%). Thus, urges appellant, it defines all telephone service as "local" or "long distance," "based on a 24 cents line of demarcation," [3] and makes no provision for any third category in between, and when the Company makes its charges, with the Commission's approval, on the basis of three rate schedules, to wit: A-1, local; B-1, toll service: and H-1, message unit toll service, such charges are violative of the federal taxing statute, and unconstitutional.

The first Commission schedule, "A-1", is for calls to certain prefixes in the Los Angeles Extended Area comparatively close to the subscriber's prefix, which are billed on a flat rate basis. The "B-1" schedule is for calls outside the Los Angeles Extended Area, and the charges vary with the length of the call and the length of its time. The cost is always more than twenty-four cents per call. The "H-1" schedule is for calls to more distant prefixes than those within the "A-1" area, but still within the Los Angeles Extended Area. They are "message unit" calls and are billed on a fluctuating toll basis, their amount depending on distance and time involved. Some calls under this latter schedule cost more than twenty-four cents, and some less.

Appellant alleges that she was charged less than twenty-four cents for "H-1" unit message calls, and that these should have been included within the flat rate charge for "A-1" calls. She further alleges that she refused to pay what she deemed to be the unlawful part of her telephone bill, and that because of such refusal to pay, her telephone was disconnected by the Company.

Appellant prays for specific relief against both appellees to require certain changes in the tariffs under which the Company operates, and to require the restoration of her telephone service. She prays also for an injunction against both appellees to prevent them from enforcing the present tariff schedules promulgated by the Commission.

Both appellees moved to dismiss the action on the grounds that the district court had no jurisdiction over the subject matter of the complaint and that the complaint failed to state a claim. The court granted the motions on the latter ground.

Twelve days after the court had ordered the action dismissed, but prior to the execution of formal orders dismissing the action, appellant filed with the

Chapter 33—Facilities and Services
Subchapter B—Communications
Sec. 4251.—Imposition of tax.
There is hereby imposed on amounts paid for the communication services or facilities enumerated in the following table a tax equal to the percent of the amount so paid as is specified in such table:

| Taxable service | Rate of tax Percent |
|---|---|
| Local telephone service | 10 |
| Long distance telephone service | 10 |
| Telegraph service | 10 |

\* \* \* \* \* \* \*
The taxes imposed by this section shall be paid by the person paying for the services or facilities.
Sec. 4252. Definitions.
(a) Local Telephone Service.—As used in section 4251 the term 'local telephone service' means any telephone service not taxable as long distance telephone service; \* \* \*
(b) Long Distance Telephone Service.

—As used in section 4251 the term 'long distance telephone service' means a telephone or radio telephone message or conversation for which the toll charge is more than 24 cents and for which the charge is paid within the United States.
(c) Telegraph Service.—As used in section 4251 the term 'telegraph service' means a telegraph, cable, or radio dispatch or message for which the charge is paid within the United States.
\* \* \* \* \* \* \*
Sec. 4254. Computation of Tax.
(a) In General.—If a bill is rendered the taxpayer for telephone services or telegraph services with respect to which a tax is imposed by section 4251, the amount upon which the tax shall be based shall be the sum of all such charges included in the bill, and the tax shall not be based upon the charge for each item, separately, included in the bill. \* \* \*"

3. Complaint, Tr. p. 10.

district court and served upon appellees an application for a hearing before a three-judge court. Thereafter the formal orders of dismissal were filed.

It perhaps should be here emphasized that the federal tax on all calls, whether local or long distance, is the same, *i. e.,* ten per cent.

As damages, appellant prays for a *gross* refund of $20.76 for 1957, and a total *net* refund of $1.44 for the period January 1st to March 1st, 1958; for the restoration of her telephone service; $5,000 in damages against the Company for overcharges; $10,000 for disconnecting her telephone; $10,000 damages from the Commission for permitting the Company to make the charges; and, $20,000 damages against the Commission for its failure to restrain the disconnection of her telephone. No facts are alleged to show any monetary damage in excess of $50.00, or thereabouts.

The fundamental legal question with respect to appellant's alleged claim is whether §§ 4251, 4252 and 4254 of the Int.Rev.Code limit state public utilities commissions in establishing schedules for intrastate telephone calls.

The district court judge concluded they do not. We agree.

The Internal Revenue Code imposed federal taxes, as it had a right to do. The Commission fixed the telephone rates, as it had a right to do. The Commission's rates had nothing to do with the federal tax and the federal tax had nothing to do with fixing the rates, but was on them as fixed.

■ Federal power initially depends on the concept of interstate, not intrastate commerce, and what may affect it. See, e. g., United States v. Public Utilities Commission of Cal., 1953, 345 U.S. 295, 73 S.Ct. 706, 97 L.Ed. 1020; Cloverleaf Butter Co. v. Patterson, 1942, 315 U.S. 148, 786, 62 S.Ct. 491, 86 L.Ed. 754; N. L. R. B. v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893; Fairway Foods, Inc., v. Fairway Markets, Inc., 9 Cir., 1955, 227 F.2d 193; Las Vegas Merchant Plumbers

Ass'n v. United States, 9 Cir., 1954, 210 F.2d 732, certiorari denied 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645; N. L. R. B. v. Townsend, 9 Cir., 1951, 185 F.2d 378, certiorari denied 341 U.S. 909, 71 S.Ct. 621, 95 L.Ed. 1346.

■ No cause of action is, or can be, stated on the facts alleged in appellant's complaint, and the dismissal was properly granted in that no legally cognizable claim was stated, and no substantial federal question presented.

Because of our determination on the principal point, and the ground on which the district court dismissed the complaint, we need not pass upon the question of the jurisdictional amount alleged (28 U.S.C. § 1331); the lack of jurisdiction in the federal courts to enjoin an order of a state rate-making body affecting intrastate rates alone (28 U.S.C. § 1342); or appellant's lack of allegation of exhaustion of her remedies, if any, in the state courts (28 U.S.C. § 1342). Any one of these matters would pose difficult problems for appellant to overcome before jurisdiction could exist in the federal courts.

It should be noted that the portions of the United States Constitution and the portions of the Internal Revenue Code hereinabove noted, are the only authorities cited by appellant in her thirty-three page opening brief and her twenty-seven page closing brief. Such would be excellent authority, if applicable. No attempt has been made to refer this Court to any adjudicated decisions interpreting either the Constitution or the Internal Revenue Code in the manner here urged by appellant.

There remains appellant's point that the district court had no jurisdiction to refuse to take steps to convene a three-judge court, once a demand therefor had been made.

Section 2281, 28 U.S.C., upon which appellant relies, provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the ac-

tion of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statute, shall not be granted by any district court or judge thereof upon the ground of unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

Appellant did not assert her alleged right to a hearing before a three-judge court until this case had been decided, but even if she had made a timely motion, she would not have an absolute right to have a three-judge court convened.

The language of 28 U.S.C. § 2284 supports appellant's position, and particularly subdivision (5) thereof, stating that a single judge shall not dismiss the action. But, as is true of all enactments, the ultimate meaning depends on interpretations which are required of all courts, under the well and early settled pronouncement in Marbury v. Madison, 1803, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60, of judicial review.

The case of Jacobs v. Tawes, 4 Cir., 1957, 250 F.2d 611, 614, is directly in point, and is most recent. There the court said:

"Appellant contends, however, that the District Judge was without jurisdiction to dismiss the case, arguing that, since a court of three judges was required for the hearing of the application for injunction, a single judge had no jurisdiction to take any action in the case and, because of the provisions of 28 U.S.C. § 2284(5), might not dismiss it, even though no claim for relief cognizable in a federal court was stated in the complaint. We think that this contention is entirely without merit. The court of three judges is not a different court from the District Court, but is the District Court composed of two additional judges sitting with the single District Judge before whom the application for in-

junction has been made. 28 U.S.C. § 2284(1). The purpose of the requirement of three judges for the hearing of such a case is to prevent the improvident invalidation of state legislation by action of a single judge. Phillips v. United States, 312 U. S. 246, 248–251, 61 S.Ct. 480, 85 L.Ed. 800. The presence of the two additional judges is not required where no substantial question as to the validity of the state legislation is involved. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 4, 78 L.Ed. 152; Davis v. County School Board of Prince Edward County, D. C., 142 F.Supp. 616. The same is held where no basis for injunctive relief is asserted. Linehan v. Waterfront Commission of New York Harbor, D.C., 116 F.Supp. 401 (a case decided after the enactment of 28 U.S. C. § 2284). A fortiori, it is not required that the additional judges be summoned, when, as here, it appears from the complaint itself that the case is not one within the jurisdiction of the court. Such a case is manifestly not one 'required by Act of Congress to be heard and determined by a district court of three judges' within the language of 28 U.S.C. § 2284. As said in Ex parte Poresky, supra, ' * * * the provision requiring the presence of a court of three judges necessarily assumes that the District Court has jurisdiction.'

"The rule laid down in Ex parte Poresky, supra, has not been changed by anything contained in 28 U.S.C. § 2284. That section was enacted to codify and clarify the practice with respect to the composition of and procedure before courts of three judges. Subsection 5 of the section was manifestly intended to regulate procedure after the court of three judges had been constituted, not to abrogate the salutary rule that the judge before whom the action was brought may dismiss it if the complaint does not state a case

within the jurisdiction of the District Court." Id. at page 614.

This Court has previously taken the same position. Van Buskirk v. Wilkinson, 9 Cir., 1954, 216 F.2d 735, 737. For a discussion of the subject, see Note, "A Survey of the Three Judge Requirement," 47 Georgetown L.J., 161, 166 (1958), with cases cited.

Chief Judge Parker, one of our great Court of Appeals judges, said in Jacobs v. Tawes, supra.

> "[S]tatutes should be construed to avoid absurd consequences, as Congress must be presumed not to have intended what was absurd; and it would certainly be absurd to require that, in a case of which the court manifestly lacks jurisdiction, the District Judge must notify the Chief Judge of the Circuit to call in two additional judges, the Chief Judge must call them in and all the cumbersome machinery of a court of three judges must be set in motion merely to dismiss the case. If the single District Judge in dismissing the case for lack of jurisdiction commits error, the error can be corrected by appeal to the Court of Appeals without burdening the Supreme Court with a direct appeal." Id. at page 615. See also, California Water Service Co. v. City of Redding, 1938, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323; Wicks v. Southern Pac. Co., 9 Cir., 1956, 231 F.2d 130, 134, certiorari denied Wicks v. Brotherhood of Maintenance, 351 U.S. 946, 76 S.Ct. 845, 100 L.Ed. 1471; Linehan v. Waterfront Commission of New York Harbor, D.C.S.D.N.Y. 1953, 116 F.Supp. 401, 403–404.

Appellant also contends that even if she did not ask for the three-judge court, the trial judge had a duty under 28 U.S.C. §§ 2281 and 2284 to convene the three-judge court when he saw that the relief demanded by the appellant would have to include an injunction against a state rate-making body. In this case, the district court, of course, had no such duty for the reasons discussed above. If the

district court did not have a proper action before it, it could not of its own motion take steps to convene a three-judge court, any more than it could on appellant's motion.

 The district judge below had the duty to determine, before requesting a three-judge court, whether appellant's complaint stated a claim upon which relief could be granted. He found it did not. Hence he was not required to request the Chief Judge of the Circuit to convene a three-judge court. His determination is, of course, subject to review on appeal. That review we have given in this case. We find no error.

The judgment of dismissal is affirmed.